## CIRCUIT COURT OF WASHINGTON COUNTY

C. Tate Graham

v.

First Virginia Bank et al.

October 19, 1988

Case No. (Law) 3694

By JUDGE CHARLES H. SMITH, JR.

This suit involves a claim for compensatory and punitive damages allegedly sustained by the plaintiff as a result of the defendant's alleged wrongful application of funds entrusted to them by the plaintiff. The defendants have demurred to the pleadings stating basically that they were entitled to apply the funds as they did as a matter of law. The court has reviewed the pleadings, exhibits, and memoranda of counsel and have considered same along with the arguments of counsel made at the *ore tenus* hearing regarding the pending demurrer. In consideration of all of which the court finds as follows.

The facts are relatively simple. The plaintiff is a resident of Radford, Virginia, and apparently has been a customer of the defendant bank. In the months of September and December of 1985, the plaintiff negotiated two separate loans with the defendant bank and signed two separate installment notes for payment thereof, the first in the original principal amount of $5,598.88 and the second in the original principal amount of $2,012.30. The plaintiff apparently defaulted on both installment payments, and the bank, in accordance with the terms of the notes, wrote to the plaintiff by letters dated June 3, 1986, declaring

156

both notes due and payable in full. Subsequently, around July 7, 1986, plaintiff notified the defendant bank that he had a $9,000.00 check made payable to him drawn upon the account of Early Grove Gas Company at Miners and Merchants Bank of Grundy, Virginia. The plaintiff allegedly negotiated with the defendant, Francisco, an arrangement whereby he would present the check to the bank for cash and would allow them to apply part of same to the payment of the smaller note in full and to bring the installments on the larger one up to date. He was then to receive the balance of some $6,600.00 in cash. Notwithstanding this alleged agreement and over the apparent vehement protestations of the plaintiff, the defendants apparently withheld from the $9,000.00 sufficient funds to pay both notes in full and gave the plaintiff a refund of some $2,000.00.

The issue, of course, is whether the bank had the right to retain the funds and apply them as aforesaid.

For purposes of the demurrer, all facts alleged in the motion for judgment or reasonably inferable therefrom are considered true. The demurrer challenges the sufficiency of the pleadings stating that, even if true, the facts alleged do not state a cause of action for which relief can be granted. Consequently, for purposes of the demurrer, the court must accept the allegations of the plaintiff concerning how this transaction arose. Nevertheless, the defendants contend the plaintiff is not entitled to recover because the bank was entitled to the set-off as a matter of law.

It is a common rule of banking that a bank has a general lien upon all the securities of a customer or depositor which may be in the bank's possession unless its securities have been delivered to the bank under an agreement limiting their application.

> It is well settled that, in the absence of fraud or collusion or intent to effect a preferential payment, a bank may set off a deposit made in the ordinary course of business and subject to withdrawal by the depositor, even though the bank may know that the depositor is insolvent at the time. But, in order that the bank may invoke this rule, the deposit must have been made by the depositor in the ordinary course

of business. The right of set-off does not exist if the bank accepts the deposit knowing that it is made for a special purpose or is subject to a trust for the creditors of the depositor. By its acceptance of a special deposit, a bank impliedly binds itself not to set off against it a debt due it from the depositor. An agreement inhibiting such appropriation need not be proved in any particular manner. Evidence of the quantity required for proof of any other parol agreement suffices. (Michie's Jurisprudence, vol. 3A, *Banking and Finance*, section 61).

The prerequisites to a bank's exercise of its common-law right of set-off against a customer's account are: (1) existence of a debtor-creditor relationship between bank and customer, (2) the customer's ownership of a general deposit account in the bank to which set-off may be made, and (3) mutuality of matured indebtedness.
Banks have a common-law right to set-off. The right may also be provided for in a contract between depositor and bank. There must be a mutuality of indebtedness. That means that the depositor must owe the bank a matured debt while the bank owes the depositor money based on his general deposit account. Mutuality requires the same parties with the same rights . . . (Michie's Jurisprudence, vol. 3A, 1987 Supplement, section 61).

Based upon the foregoing and the allegations of the motion for judgment which are taken as true, the court is of the opinion that the demurrer should be over-ruled as it does not appear the bank was entitled to the set-off as a matter of law. There are factual issues presented to be resolved by the trier of fact as to whether or not the delivery of the check was for a special purpose, whether this was a "deposit" made in the ordinary course of business, whether there was a prior agreement concerning the application of the money as alleged, etc.
The plaintiff contends that the defendants' actions in this regard constituted a conscious, willful, and

158

outrageous disregard of his rights and requests an award of punitive damages. The Supreme Court of Virginia has stated on numerous occasions:

> Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others. They are allowed not so much as compensation for plaintiffs' loss, as to warn others and to punish the wrongdoer if he acted wantonly, oppressively, or with such malice as to evince a spirit of mischief or criminal indifference to civil obligations. Willful or wanton conduct imports knowledge and consciousness that an injury will result from the act done. (*Giant of Virginia v. Pigg*, 207 Va. 679 (1967))

As stated above, the court must consider the allegations of the motion for judgment as being true for purposes of the demurrer. Can the court say, based upon these pleadings, that, as a matter of law, no jury issue as to punitive damages has been made out? I am of the opinion that, upon the basis of these pleadings, there is a jury issue as to whether the alleged acts of the defendants were so willful, wanton, and negligent as to evince a conscious disregard of plaintiff's rights.